**In the Matter of H. L. BENNETT CO., Bankrupt.**

**Appeal of FIRST PENNSYLVANIA BANK, N.A.**

No. 78–1136.

United States Court of Appeals, Third Circuit.

Argued Sept. 5, 1978.

Decided Nov. 27, 1978.

24. 411 U.S. at 435, 93 S.Ct. at 1644.

David Freeman, ·Philadelphia, Pa., for Irvin and Lauretta Sall and V. A. Herman, Inc.

W. Thomas Tither, Jr., Anthony F. Walsh, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for appellant.

Before GIBBONS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This appeal requires us to interpret UCC section 9–402(1) (Pa.Stat.Ann. tit. 12A, § 9–402(1) (Purdon 1970)), which states in pertinent part that "[a] financing statement is sufficient if it . . . contains a statement indicating the types, or describing the items, of collateral." [1] The Bankruptcy Court held that a financing statement describing the collateral for a note as "[a]ll assets as contained in the security agreement (installment note) executed even date herewith" did not satisfy the requirements of section 9–402(1). The district court reversed, ruling that the description of collateral was adequate under the statute. We hold that the financing statement at issue failed to comply with section 9–402(1), and thus reverse the district court's order. [2]

## FACTS

H. L. Bennett Co. (Bennett), the bankrupt, purchased in 1973 the assets of V.A. Herman, Inc., whose only shareholders were Irvin and Lauretta Sall (the Salls). Ben-

1. In its entirety, section 9–402(1) provides:

§ 9–402. Formal Requisites Of Financing Statement; Amendments

(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.

2. We have jurisdiction to hear this appeal under 11 U.S.C. § 47(a) (1976).

nett was unable to pay the entire $46,000 purchase price in cash, so it executed a note to the Salls for the balance due, along with a security agreement. The security agreement, dated May 31, 1973, listed as collateral for the note:

all inventory, machinery, equipment, motor vehicles, and all items of personal property belonging to Undersigned presently upon premises 4222–24 Ludlow Street, Philadelphia, Pennsylvania, and hereafter acquired, subject, however, and subordinate to any and all bank loans or claims of banking institutions, together with: (a) all proceeds of the property, including cash, stock and other dividends and rights to subscribe to securities incident to such property; (b) all additions to, exchanges or substitutions for the property; and (c) all property of Undersigned now or at any time hereafter in the possession of Payee or other holder of this note in any capacity whatsoever.

The Salls' financing statement was filed on June 6, 1973. It identified the collateral as "[a]ll assets as contained in the security agreement (installment note) executed even date herewith." The security agreement was not attached to the financing statement nor otherwise publicly filed. The First Pennsylvania Bank N. A. (Bank) subsequently loaned money to Bennett and another security agreement was executed. The Bank filed a financing statement, the adequacy of which is not challenged in this appeal.

Bennett eventually filed for bankruptcy and both the Salls and the Bank claimed against the estate as secured creditors. The Bank objected to the Salls' secured status. It contended that the Salls' claim had not been perfected because the reference in the Salls' financing statement to "all assets" was neither an indication of the types, nor a description of the items, of collateral, as required by section 9–402(1). As a result, the Bank asserts that it has a prior right to the assets listed in its financing statement.

## DISCUSSION

■ The sole issue presented by this case is a narrow one of statutory interpretation:

Is the description of collateral in the Salls' financing statement as "[a]ll assets as contained in the security agreement (installment note) executed even date herewith" sufficiently specific to satisfy the requirement of section 9–402(1) that a financing statement contain "a statement *indicating the types,* or *describing the items,* of collateral?" (emphasis added). We hold that it is not.

The weight of authority indicates that a financing statement must describe collateral with some degree of precision in order to meet the standards of section 9–402(1). Professor Grant Gilmore, who played a preeminent role in drafting Article 9 of the UCC, wrote that a drafter of a financing statement could not satisfy the statutory requirement that collateral be identified by "type" or "item" merely by stating, as the Salls' did, that all of the debtor's assets served as collateral. Professor Gilmore suggested that "[t]he description by 'types' (in section 9–402(1)) is understood to require a certain degree of specificity: it would not be sufficient for the notice to claim 'all the debtor's property,'" a phrase equally broad in scope to the "all assets" language used by the Salls. 1 G. Gilmore, Security Interests in Personal Property § 15.3, at 477. Professor Gilmore's view that the statute requires greater particularity in identifying collateral than that contained in financing statements similar to appellees' is shared by the courts that have faced this question.

In *In re Fuqua,* 461 F.2d 1186 (10th Cir. 1972), the Tenth Circuit held that a reference to "all personal property" in a financing statement "does not even approach a description of property by type or [item] as is required" by section 9–402(1). *Id.* at 1188. And in *In re Lehner,* 303 F.Supp. 317 (D.Colo.1969), *aff'd* 427 F.2d 357 (10th Cir. 1970), the district court held that:

While the Comment [to section 9–402(1)] states that the financing statement is sufficient if it puts potential creditors on inquiry notice, the statutory language . . . clearly requires some specificity

of description—the financing statement must indicate the *type* or describe the *item* of collateral. (emphasis in the original.)[3]

303 F.Supp. at 318.

■ We agree with the analysis of those courts and of Professor Gilmore and conclude that the statutory mandate of identification by "types" or "items" requires the drafter of a financing statement to refer to the collateral for a loan with greater specificity than merely as "all assets" of the debtor. Because section 9–402(1) is phrased in the alternative, permitting a financing statement either to indicate the types *or* to describe the items of collateral, the drafters of that section necessarily intended for there to be two permissible means of identifying collateral. Description by "item" would appear to be the more specific method. The Salls do not contend that their financing statement contains a description of each item of collateral.

■ Indication by "type", on the other hand, implies a more general mode of identifying collateral. The Bank contends that the broad categories of personal property used in Article 9 of the UCC, such as "consumer goods," "equipment," "farm products," and "inventory," UCC § 9–109;

"account," "contract right," and "general intangibles," *id*. § 9–106; and "instrument," *id*. § 9–105(1)(g), constitute "types" of collateral within the meaning of section 9–402(1). We note that there is a controversy as to whether even these categories of property satisfy the statutory requirement of identification by "types";[4] we need not settle that controversy to reach a decision in this case. We do hold, however, that a financing statement like the Salls', which lists collateral *less* specifically than by reference to the categories of personal property contained in Article 9, does not comply with the statutory imperative of identification by "types."

The district court in this case did not explicitly reject the analysis of *Fuqua* and *Lehner*, with which we concur. Instead the court held that those cases were not controlling, because whether or not the Salls' financing statement complied with section 9–402(1) was to be determined by reference to Pennsylvania law. The district court ruled that the official UCC comments to sections 9–402(1) and 9–402(5),[5] and the Pennsylvania Supreme Court's holding in *Heights v. Citizens National Bank*, 463 Pa. 48, 342 A.2d 738 (1975), compelled it to hold for the Salls. We agree with the district court that we should first look to Pennsyl-

---

**3.** The court in *Lehner* held that a description of collateral as "consumer goods" was insufficiently specific for section 9–402(1) purposes. *But see In re Turnage*, 493 F.2d 505 (5th Cir. 1974). While we agree with the *Lehner* court's conclusion that some degree of specificity is required under the statute, we express no opinion as to whether "consumer goods," which is a category of personal property under section 9–109 of the UCC, conforms to the requirements of section 9–402(1). *See* 392 *infra.*

The cases from other circuits holding that financing statements satisfied the requirements of section 9–402(1) all involved descriptions of collateral substantially more particular than the one at issue in this appeal. In *United States v. Crittenden*, 563 F.2d 678 (5th Cir. 1977), *appeal granted*, —— U.S. ——, 99 S.Ct. 77, 58 L.Ed.2d 108 (1978), the Fifth Circuit held that the phrase "farm equipment" was an indication of the "type" of collateral. *See generally United States v. First National Bank in Ogallala*, 470 F.2d 944 (8th Cir. 1973). Similarly, in *In re Turnage, supra*, the Court held that a reference to "consumer goods" was consistent

with the dictates of section 9–402(1). In both *First National Bank* and *Turnage*, the financing statements contained language qualifying the phrases "farm equipment" and "consumer goods" which made the statements quite specific. Moreover, "farm equipment" and "consumer goods" are examples of, or are analogous to categories of personal property defined in Article 9 of the UCC, and are thus much more precise than the Salls' reference to "all assets." *See* 392 *infra.*

**4.** *Compare In re Turnage*, 493 F.2d 505, 506–07 (5th Cir. 1974) (description of collateral as "consumer goods" satisfies requirements of section 9–402(1)) *with In re Lehner*, 303 F.Supp. 317, 320 (D.C.Colo.1969), *aff'd*, 427 F.2d 357 (10th Cir. 1970) (opposite).

**5.** These comments are useful in the construction and application of the Pennsylvania UCC. *See* Pa.Stat.Ann. tit. 12A, at VI (Purdon 1970) (publisher's note). *See also Heights v. Citizens National Bank*, 463 Pa. 48, 59, 342 A.2d 738, 743 (1975).

vania law in deciding whether the Salls' financing statement was adequate under section 9–402(1). We do not, however, accept that court's conclusion that Pennsylvania law mandates a decision in the Salls' favor.

The UCC comment to section 9–402(1) relied on by the district court states that "[t]his section adopts the system of 'notice filing' . . . . The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described. Further inquiry from the parties concerned will be necessary to disclose the complete state of affairs." UCC § 9–402, comment no. 2. We recognize that section 9–402(1) is a "notice filing" statute. We do not, though, read the drafters' comments as circumventing the plain meaning of the statutory language in section 9–402(1) requiring an indication of "the types", or a description of "the items", of collateral. Instead, we view the "notice filing" language in the comment as wholly consistent with our interpretation of the statute.

■ Section 9–402(1) is a response to the old chattel mortgage acts, which *required* extremely specific identifications of collateral in order to perfect a creditor's security interest. *See* 1 G. Gilmore § 2.7, at 52–53; UCC § 9–110, comment. Section 9–402(1) still *permits* a creditor to describe each individual *"item"* of collateral in his financing statement.[6] The drafters of the statute appeared to recognize, however, that in certain circumstances, enumerating every item of collateral would be extremely burdensome,[7] if not impossible and therefore permitted a financing statement merely to provide notice of an existing security interest in property *by identifying the "types"* of property serving as collateral.[8] In sum, we read section 9–402(1) as permitting a creditor either to give a detailed description of each piece of personal property which would serve as collateral, if it is convenient for him to do so, or to list the collateral by types if he so chooses. Nothing in this interpretation of the statute, however, would enable a creditor to comply with section 9–402(1) by identifying collateral *any less specifically* than by reference to the categories of personal property defined in Article 9 of the UCC.

■ The comment to section 9–402(5) states that "[s]ubsection (5) is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." UCC § 9–402, comment no. 5. We do not understand this comment in any way to be at odds with our holding today. Rather, we view it simply as a reiteration by the drafters of the statute that the detailed descriptions of collateral required by the old chattel mortgage acts[9] are no longer mandated under the UCC.[10]

Finally, the Pennsylvania Supreme Court's decision in *Heights* not only fails to

---

**6.** Such detailed identification of the collateral for a loan often is advantageous to all the parties. The more precisely a financing statement identifies collateral, the less likely it will be that a subsequent creditor will require additional information about the collateral at issue. *See* 1 G. Gilmore § 15.3, at 479–80. Having to request more information can be time-consuming and expensive for subsequent creditors. In like manner, having to respond to those requests, *see* UCC § 9–208(2), can be burdensome for the original creditor.

**7.** For example, a detailed itemization of collateral would be impractical when the collateral is inventory or accounts receivable, because the specific accounts receivable and the individual items comprising inventory are constantly turning over. *See* 1 G. Gilmore § 15.3, at 479.

**8.** *See* 392 *supra.*

**9.** *Compare* UCC § 9–402, comment no. 5, *with* 1 G. Gilmore § 2.7, at 52–53.

**10.** The district court also appeared to find that the Salls' security interest was perfected by virtue of section 9–402(5), which provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading." We do not believe that the Salls' description of collateral substantially complied with section 9–402(1), or that the error in their financing statement was minor. As we have indicated, section 9–402 requires that collateral at least be identified by types. The Salls did not even come close to satisfying the statutory require-

support the district court's conclusion that the Salls' "all assets" language complies with section 9–402(1), but in fact supports our holding to the contrary. The portion of *Heights* on which the district court relied stated:

> The description of collateral in a financing statement need not be specific or exact as long as it *reasonably* identifies the type of property in which a security interest has attached. . . . It is sufficient if it provides enough information to put a person *on notice* of the existence of a security interest in a particular type of property so that further inquiry can be made about the property subject to the security interest.

463 Pa. at 58–59, 342 A.2d at 743 (emphasis in the original).

 The collateral description accepted by the Court in *Heights, see* 463 Pa. at 59, 342 A.2d at 743, was "[a]ll accounts receivable and inventory including proceeds both present and future but not limited to proceeds from inventory and receivables both

ment. *See Fuqua, supra,* at 1188. *See generally* 1 G. Gilmore § 15.3, at 477. Moreover, the Salls' reference to "all assets as contained in the security agreement" is extremely ambiguous. The Salls' counsel insisted at argument that that phrase can only be read to mean that all of the bankrupt's assets served as collateral; thus the Bank was provided with sufficient notice of a prior claim on each item of the bankrupt's property to make any technical non-compliance with the statute an error of *de minimis* proportion. To the contrary, we read "all assets as contained in the security agreement" as equally likely to indicate that the collateral consisted of every asset *which was listed* in the security agreement, but not necessarily every asset owned by the bankrupt. We are particularly unwilling to excuse appellee's failure to comply with the requirements of section 9–402(1) when the failure to do so has the tendency to confuse a subsequent creditor. *See* Brief for Appellant, at 7.

11. The district court also relied on *In re Kline,* 1 UCC Rep. 628 (Ref. Dec. E.D.Pa.1956), a case which we are therefore obliged to address even though it is an unpublished opinion. There, the bankruptcy referee stated:

> It is apparent from this language that something less than a detailed description of the property to be covered is sufficient. The official comment to this section of the Code

present and future." 463 Pa. at 58, 342 A.2d at 743. "Accounts receivable" and "inventory" are both categories of personal property listed in Article 9 of the UCC. *See* 392 *supra.* The identification of collateral in *Heights* is thus substantially more detailed than the one at issue in this appeal. Moreover, the specific paragraph quoted by the district court twice states that a financing statement must identify the *type* of property which constitutes collateral. Read in that light, we view *Heights* as fully compatible with our holding that a financing statement describing collateral less specifically than by reference to the broad categories of property defined in Article 9 does not comply with section 9–402(1).[11]

## CONCLUSION

The order of the district court will be reversed.

. . . adopts the system of 'notice filing'. . . . The notice itself indicates merely that the secured party who has filed may have a security interest in the collateral described and that further inquiry from the parties concerned will be necessary to disclose the complete state of affairs. Accepting this comment as we do, it would appear that if the description employed in a financing statement is sufficient to give direction to a course of inquiry concerning the property allegedly covered, the party concerned will be charged with notice of all facts ascertainable by pursuing such inquiry. It is not necessary that the property should be capable of identification solely from the designation contained in the financing statement itself. *Id.* at 632. The description of collateral in *Kline* was "Motor Vehicles," a phrase that identifies the collateral far more precisely than the Salls' reference to "all assets as contained in the security agreement." Reading the court's statement in that context, we are unable to say that it is inconsistent with our holding today. Moreover, *Kline* was a decision of a federal bankruptcy referee, not a state court. Even if *Kline* and this case were irreconcilable, we would not be bound by the bankruptcy court's interpretation of Pennsylvania law.