**In the Matter of Thomas Kenneth KOHL, Debtor.**

**LADER'S TIFFANY FEED & SUPPLY CO., INC., Plaintiff,**

v.

**Thomas Kenneth KOHL, Defendant.**

**Adv. No. 81–0016.**

United States Bankruptcy Court, W. D. Wisconsin.

March 30, 1982.

Richard V. Holm, Hansen, Eggers, Berres & Kelley, S. C., Beloit, Wis., for defendant.

David B. Feingold, Feingold Law Offices, Janesville, Wis., Russell D. Feingold, Foley & Lardner, Madison, Wis., for plaintiff.

## MEMORANDUM DECISION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This case was tried to the court on January 29, 1982. The plaintiff appeared by its attorneys, David B. Feingold and Russell D.

Feingold, and the defendant appeared by his attorney, Richard V. Holm. The case was extensively briefed by counsel.

The plaintiff, Laders, is an agricultural feed and supply company which purchased crops of defendant, Kohl, which were allegedly subject to a security interest in favor of Green Rock F–S Cooperative. Green Rock did business with Kohl on an open account basis from May 5, 1977, until July 18, 1977. Prior to and during that period Kohl was applying for formalized financing under the agri-finance program administered by the Farm Service headquarters in Bloomington, Illinois. When Kohl's application for agri-finance was turned down, Green Rock by its credit manager, Jerry Jensen, prepared a form consumer security agreement designating Green Rock as the secured party and Kohl as the debtor. That draft security agreement provided,

> [T]he undersigned debtor grants the undersigned secured party a security interest in the property checked in section 2 ("collateral") to secure all debtor's debts.

Section 2 of the security agreement entitled "DESCRIPTION OF COLLATERAL" provided eight categories of collateral, each of which was described in a single sentence preceded by a box. The boxes were aligned along the left-hand margin on the paragraph of the agreement. No box on the agreement was checked or otherwise marked to identify the category of collateral covered. Two of the categories did include the underlined additions to the standard printed language a typed language, to wit:

> The following products of livestock now owned or hereafter acquired by Debtor: *N/A*
>
> .   .   .   .   .
>
> All crops which are or become growing within one year from date on real estate owned of record by Thomas K. Kohl and legally described as:
>
> > *115 acre farm of Turtle Farms Inc. in Section 17 of Beloit Township, 56 acre farm of Turtle Town Hall Farm in*

*Section 25 of Turtle Township, 35 acre farm of Beloit Lime and Land in Section 22 of Turtle Township, 80 acre farm of Wm Behling in Section 2 of Beloit Township and 45 acre farm of Able Farms Inc., in Section 23 of Turtle Township, Rock County, State of Wisconsin.*

and the products of all such crops.

The security agreement was signed on July 18, 1977, by Thomas K. Kohl. There is no signature in the line indicated for a signature by Green Rock F–S Cooperative. Green Rock filed a financing statement for the purpose of perfecting the security interest obtained by the security agreement.

In a state court, prior to this bankruptcy, Laders entered into a settlement with Green Rock which was premised on the enforceability of the security agreement against purchasers of farm products under Wis.Stat. § 409.307(1). Lader now seeks to have the amount paid in that settlement, which represents part of the value of crops purchased by Laders and raised in 1977 by Kohl on lands described in the security agreement, held to be nondischargeable in Kohl's chapter 7 bankruptcy. The preliminary or threshold issue, therefore, is whether Green Rock had a valid perfected security interest under the above-described security agreement in Kohl's 1977 crops. The issue is controlled by Wis.Stat. § 409.203(1) which provides:

> [A] security interest is not enforceable against the debtor or 3rd parties with respect to the collateral and does not attach unless:
>
> (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned.

The present agreement by its terms, "[t]he undersigned debtor grants to the undersigned secured party a security interest in

the property *checked*" (emphasis added),[1] fails to identify any collateral. No box on the agreement was checked. The agreement provides no other basis for any interest in this or other collateral. A similar case in which an agreement originally signed in blank was later checked by the secured party to indicate the coverage of certain collateral was decided by this court. *In re Hein*, 20 UCC Rep. 745, 748 (W.D.Wis. 1976). Judge Bessman stated unequivocally that "[t]he failure to check a box pertaining to specified collateral excludes the property from the coverage of the security instrument and parol evidence as to the intention of the parties is inadmissible. *Mitchell v. Shepherd Mall State Bank*, 458 F.2d 700, 748 [9 UCC Rep. 165] (10th Cir. 1972)." No argument advanced by the plaintiff for variation or abandonment of the reasoning of Judge Bessman in *In re Hein* is compelling. This court is bound by its own decision under the doctrine of *stare decisis.*

The plaintiff having failed on the threshold issue in this case, other issues need not be reached. The defendant is entitled to the discharge of his debt to Laders.

▇ Kohl has claimed reasonable costs, disbursements and attorney's fees pursuant to 11 U.S.C. § 523(a) which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment against such creditor and in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding to determine dischargeability, unless such granting of judgment would be clearly inequitable.

This action has been brought under 11 U.S.C. § 523(a)(2). By its specific terms 11 U.S.C. § 523(d) provides that the award of reasonable attorney's fees is mandatory unless the granting of judgment for costs would be clearly inequitable. *In re Schlickmann*, 7 B.R. 139, 141, 7 B.C.D. 30, 32, 3 C.B.C.2d 296, 298 (Bkrtcy.D.Mass.1980). ("Section 523(d) does not provide for judicial discretion in this matter. It is a strong directive, with an exception in the cases only of *clear inequity.*") *In re Majewski*, 7 B.R. 904, 907, 7 B.C.D. 112, 113, Bankr.L. Rep. (CCH) ¶ 67,753 (Bkrtcy.D.Conn.1981). ("The compromise language [of § 523(d)] retains the mandatory word 'shall' concerning an award of attorney's fees even though followed by the qualifying phrase, 'unless such granting of judgment would be clearly inequitable.'") *In re Folster*, 17 B.R. 171 (Bkrtcy.D.Hawaii 1982). ("The final language adopted by Congress retains the mandatory word 'shall' in awarding attorney's fees but there is an exception found in the phrase 'unless such granting of judgment would be clearly inequitable.'") There is nothing in the evidence or elsewhere of which I an aware that would make the imposition of reasonable attorney's fees on the plaintiff inequitable. The debtor has in fact incurred considerable costs in defending this action. Upon submission of a bill of costs, including a description of attorney's services, rates of billing and any agreement with respect to fees made between Kohl and his attorneys, and after notice to the defendant of not less than 5 days, costs and attorney's fees will be taxed.

Judgment may be entered according to the terms of this decision.

---

1. The terms of the agreement must be strictly construed against Green Rock as drafter of the agreement. *In re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 609, 288 N.W.2d 852 (1980). ("[T]he general rule is that ambiguous contracts are to be construed against the maker or drafter.") (Citations omitted.) *Capital Investments v. Whitehall Packing Co.*, 91 Wis.2d 178, 190, 280 N.W.2d 254 (1979). ("A fundamental rule of contract construction that is a primary guideline in a court's consideration of a contract's ambiguity is that any ambiguity must be construed most strongly against the drafting party.") *Goebel v. First Fed. Savings & Loan Asso.*, 83 Wis.2d 668, 675, 266 N.W.2d 352 (1978). ("This observation reflects the general rule that ambiguous contract language must be construed against the drafter. This rule has particular force where, as here, there is a substantial disparity of bargaining power between the parties, and a standard form is supplied by the party drafting the form.") (Citations omitted.)