In re I.A. DURBIN, INC., Debtor.

I.A. DURBIN, INC., Plaintiff,

v.

JEFFERSON NATIONAL
BANK, Defendant.

Bankruptcy No. 84–01337–BKC–SMW.
Adv. No. 84–0639–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

Feb. 15, 1985.

Paul M. Bauch, Miami, Fla., for I.A. Durbin.

Paul D. Friedman, Miami, Fla., for Jefferson National Bank.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This matter came on for trial before the Court on November 28, 1984 on the Debtor's complaint to avoid a security interest pursuant to section 544(a) of the Bankruptcy Code. At the trial counsel for the parties represented to the Court that there was no dispute as to any material issue of fact, and that the matter could be properly decided on the pleadings, the relevant financing documents being attached thereto, or submitted with the legal memorandum, which were admitted by the parties. The Defendant was permitted to amend its answer to assert that it had in fact filed a financing statement. The Court having reviewed the pleadings, the financing documents, considered the memoranda, heard the argument of counsel, and otherwise being fully advised in the premises does hereby enter its findings of fact and conclusions of law.

■ The resolution of the proceeding requires the determination of the legal sufficiency of a Uniform Commercial Code (U.C.C.) financing statement, and the legal sufficiency of the Defendant's affirmative defense of estoppel. At the outset, the Court notes that when evaluating a U.C.C. financing statement it is not necessary that any actual creditor be misled. Rather, consistent with 11 U.S.C. § 544, the Court must consider whether a hypothetical creditor could have been misled. *In re Pacific Trencher & Equipment, Inc.,* 735 F.2d 362 (9th Cir.1984).

This adversary proceeding arises in the ongoing Chapter 11 reorganization of the Debtor, I.A. Durbin, Inc., a single-family home builder.

On March 30, 1984, the Debtor entered into a loan transaction with the Defendant in which the Debtor granted the Defendant a security interest in certain properties then owned by the Debtor. In connection with the transaction, the Debtor executed a promissory note, an assignment of contract, a mortgage, and a U.C.C. financing statement. The collateral package included second mortgages on seven parcels of improved real property and a security interest in personal property located upon the real property, a collateral assignment of certain notes and mortgages, and a collateral assignment of one-half (½) of the cash due from various customers of the Debtor upon the closing of certain specified executory contracts for the construction of improvements upon and sale of real property. The Debtor's collateral assignment to the Defendant of an interest in the proceeds to be received upon the closing of these contracts for the purchase and sale of real property is the center of dispute in these proceedings.

The collaterally assigned contracts were generally described in Exhibit A to the promissory note evidencing the loan transaction which also appeared as Exhibit A to the assignment of contract executed by the Debtor. The Court finds that the promissory note and the assignment of contract contained language which created a security interest in favor of Defendant in the contracts. The Court further finds that the mortgage, which bears recordation numbers, contains language which granted Defendant a lien upon seven parcels of real property and created a security interest in certain personal property located upon or related to the described parcels of real property.

The mortgage provides for a security interest in property described as, *inter alia,*:

All machinery, apparatus equipment, fittings, fixtures and articles of personal property of every kind and nature whatsoever, now or hereafter located in said building or upon the premises, or any part thereof, together with any proceeds thereof, and any replacements thereof,

and used or usable in connection with any present or future occupancy of said building now owned or hereinafter acquired by mortgagor (hereinafter called "building equipment") including, but not limiting the generality of the foregoing, all heating, lighting, laundry, incinerating and power equipment, engines, pipes, pumps, tanks, motors, conduits, switchboards, plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus, air cooling and air conditioning apparatus, elevators, escalators, shades, awnings, screens, storm doors and windows, stoves, wall beds, refrigerators, attached cabinets, partitions, ducts and compressions; it being understood and agreed that all building equipment as part and parcel to the premises and appropriate to the use thereof, whether fixed or annexed to the premises or not, shall for the purpose of this mortgage be deemed conclusively to be real estate and mortgage hereby; and mortgagor agrees to execute and deliver from time to time such furter instruments as may be requested by mortgagee to confirm the paramount and superior first lien of this mortgage on any building equipment. All furniture, furnishings, goods and inventory, together with any proceeds thereof and any replacements thereof which are now or may hereafter be located or situated on the premises; and

The mortgage does not describe the collaterally assigned contracts described in the promissory note and the assignment of contract. The mortgage itself does not create a security interest in the collaterally assigned contracts.

The Debtor executed a U.C.C. filing statement describing personal property located upon and related to the seven parcels of real property which the Defendant filed with the office of the Florida Secretary of State. Specifically, Defendant utilized a form U.C.C. filing statement which appears to be designed to enable a mortgagee to perfect a security interest in personal property and fixtures located upon the real property upon which it holds its mortgage. The relevant language of the financing statement which the Defendant relies on provides:

*This financing statement creates a security interest in the property described below* in favor of the Secured Party under the Florida Uniform Commercial Code to secure further a promissory note of even date secured by a mortgage of even date upon the real property situate in Broward County, Florida, and legally described as [legal descriptions of 7 parcels of real property]

The security interest created hereby covers: *All property rights* of any kind whatsoever, whether real, personal, mixed or otherwise, and whether tangible or intangible, *encumbered by the above-mentioned mortgage....* (emphasis supplied)

There is no description in the U.C.C. filing statement of any of the contracts which were collaterally assigned to the Defendant, nor does it describe any personal property rights, other than that encumbered by the mortgage. The financing statement similarly does not contain a description of the statutorily defined types of "receivable" collateral which predominant asset based lending transactions, i.e., "accounts," "general intangibles." § 679.106 Fla.Stat. (1983). The mortgage to which the financing statement refers is not the promissory note and assignment of contract which created the Defendant's security interest in the assigned contracts. Nothing in the financing statement would lead a third party creditor to believe that the Defendant was secured by traditional asset based "receivable" collateral.

It is the Debtor's position that the limitation on the reference to intangible property rights in the financing statement to intangible property rights encumbered by the mortgage upon the seven parcels of real property described in the financing statement effectively limits Defendant's perfection, if any, to the Debtor's intangible properties described in the recorded mortgage. The Debtor also contends that Defendant's

financing statement is seriously misleading in that it would not give a third party notice that the Defendant had taken a security interest in a substantial portion of the Debtor's contract receivables, because an examination of the Defendant's recorded mortgage, to which the financing statement refers, would not reveal to a third party, the Defendant's security interest in the assigned contracts.

For the reasons that follow the Court finds that Defendant's security interest was subject to the filing requirements of Article 9 of the Uniform Commercial Code as adopted in the State of Florida. The Court also finds Defendant's financing statement to be deficient on two grounds; first, it failed to sufficiently describe the collateral and second, it was seriously misleading. Finally, the Court finds that the defense of estoppel was not proven nor available to the Defendant.

## APPLICABILITY OF ARTICLE 9

Although the contracts which the Debtor collaterally assigned to the Defendant concern the sale of real property, an assignment of a contract right is an assignment of an interest in personal property. The controlling law of this circuit is set forth in the case of *Matter of Equitable Development Corp.*, 617 F.2d 1152 (5th Cir.1980) where it was held that the right to receive payment under contracts for the sale of real property is personal property. "Security interests created by a contract (in the assignment), eminates from the rights and obligations of the executory contract between the vendor and vendee, and must be characterized as personal property...." *Id.* at 1156. *See also Matter of D.J. Maltese, Inc.*, 42 B.R. 589 (Bkrtcy.E.D. Mich.1984); *In re S.O.A.W. Enterprises, Inc.*, 32 B.R. 279 (Bkrtcy.W.D.Tex.1983); *In re Columbia Pacific Mortgage, Inc.*, 22 B.R. 753 (Bkrtcy.W.D.Wash.1982); *Matter of Equitable Development Corp.*, 20 U.C. C.Rep.Serv. 1349, (Bkrtcy.S.D.Fla.1976). The contracts in the instant case are defined as "general intangibles" by the U.C.C. *Matter of D.J. Maltese, Inc., su-*

*pra.* Accordingly, the Court holds that the contracts collaterally assigned to Defendant are subject to the filing requirements of Article 9 of the Uniform Commercial Code as adopted in Florida.

## SUFFICIENCY OF DEFENDANT'S FINANCING STATEMENT

Having determined that Article 9 applies, the Court must determine whether the language in the Defendant's financing statement is sufficiently descriptive enough to put third party creditors on notice that the Defendant had a security interest in a substantial number of the debtor's contract receivables, "general intangibles."

The statutory standard for the sufficiency of the description of personal property collateral is whether the description *reasonably* identifies what is described. § 679.110, Fla.Stat. (1983). The second and ultimate statutory standard for the sufficiency of a filing statement is that it is "not seriously misleading." § 679.402, Fla.Stat. (1983). The Florida Courts have adopted the standard set forth in "[t]he comment to Section 9–110 of the Uniform Commercial Code [which] states that the test of sufficiency of a description '... is that the description do the job assigned to it—that it make possible the identification of the thing described.'" *American Restaurant Supply Company v. Wilson*, 371 So.2d 489, 490 (Fla. 1st DCA 1979). This standard applies to descriptions contained in both financing statements and security agreements. *Id.* at 490.

While the rule under the U.C.C. is that the description need only be sufficient to put a third party on inquiry notice that the secured party may have a security interest in the property described, *Matter of Glasco, Inc.*, 642 F.2d 793 (5th Cir.1981), where the description is nonetheless seriously misleading or simply insufficient, a third party creditor is entitled to prevail against the creditor claiming under the defective financing statement. *In re Antekeier*, 6 U.C.C.Rep.Serv. 1027 (Bkrtcy.W.D. Mich.1969). While fanatical exactitude of description is not required, significant

omissions or material disparaties between the financing statement and security agreement, that frustrate or forestall inquiry prevent lien perfection. *Ray v. City Bank & Trust Co. of Natchez, Mississippi*, 358 F.Supp. 630 (S.D.Ohio 1973).

It has been observed that a third party stranger, such as a trustee in bankruptcy, is entitled to a greater measure of specificity and accuracy than the debtor itself. While third parties must use reasonable care in searching the records, they need not be prophets. *Ray, supra.* This is consistent with the general rule that in a contest between the secured creditor and third parties, the greater burden should fall on the party who drafted the documents. *National Ropes, Inc. v. National Diving Service, Inc.*, 513 F.2d 53 (5th Cir.1975); *Matter of Kohl*, 18 B.R. 670 (Bkrtcy.W.D.Wis.1982).

■ The description of the property in the instant financing statement does not describe the contract receivables assigned to the Defendant in connection with the loan transaction as "items" of property, nor does it describe the statutory "type" of property, i.e. "general intangibles." Further, while being overly broad by describing "all property rights," the Defendant's financing statement is at the same time specific and limited to all property rights "encumbered by the mortgage" on the described real property. The Defendant's financing statement is, therefore, deficient because it does not describe, at all, the "general intangible" collateral which was the subject of the assignment of contract from the debtor.

The Court holds that the description contained in the financing statement, "All property rights ... tangible or intangible," does not make possible the identification of the thing allegedly described, the assigned contracts. *Matter of H.L. Bennett Co.*, 588 F.2d 389 (3d Cir.1978). *In re Fuqua*, 461 F.2d 1186 (10 Cir.1972); *In re Mansour, Inc.*, 29 B.R. 114 (Bkrtcy.S.D.Fla. 1983).

The Defendant's reliance on *In re Stegman*, 15 U.C.C.Rep.Serv. 225 (S.D.Fla.1974) is misplaced. To the contrary, *Stegman*

recognized that "all personal property" is not a defined class of property in the U.C.C. *Id.* at 227. In *Stegman*, the secured creditor attempted to describe property by item "various equipment, see Schedule A attached hereto." 15 U.C.C. Rep.Serv. at 226. When it failed to attach the schedule, however, the statement nonetheless referred to a statutorily defined "type" of property, "equipment," a well defined subclass and term of art under the U.C.C. *Id.* at 228. Thus, while the *Stegman* creditor's attempt to limit its perfection to specific "items" of a "type" of collateral was defeated by its failure to attach the schedule. The failure to attach the schedule did not vitiate the broader description of the "type" of collateral. Defendant's financing statement in this case does not designate "general intangibles" as a type of property securing its loan and accordingly, it does not "do the job." *Id.* See also *In re McKeon*, 7 B.R. 10 (Bkrtcy. N.D.Fla.1980).

■■ In addition, this financing statement limits its description to intangible property rights encumbered by a mortgage on seven specifically described parcels of real property. The presence of qualifying or limiting words in a financing statement description functions to limit the scope of perfection of a creditor's otherwise valid security interest. Where a secured creditor elects to describe specific property rather than "types", *i.e.*, inventory, accounts receivable, equipment, general intangibles, etc., the creditor is perfected only to the property so described and not to other property of the same type. *Matter of Katz*, 563 F.2d 766, 768 (5th Cir.1977); *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124 (2d Cir.1973).

A financing statement, if more limited in scope than the security agreement which it perfects, limits the collateral in which the creditor has a perfected interest to that description as against third party creditors and a trustee in bankruptcy. [citations omitted] The purpose of a financing statement is to give notice of the type of collateral that may be subject to

a security interest and that purpose is subverted if a third party cannot reasonably ascertain from the financing statement the type of collateral as distinguished from the particular items of collateral which may be subject to a particular security interest.

*Matter of Door Supply Center, Inc.,* 3 B.R. 103, 105 (Bkrtcy.D.Idaho 1980). The Court holds that a description of property in the Defendant's financing statement, limited its perfection to the personal property encumbered by its mortgage on the real property. *Georgia-Pacific Corporation v. Lumber Products Company,* 590 P.2d 661 (Okla.1978).

■ In addition to the insufficient description in the Defendant's financing statement, the Court finds that the financing statement is seriously misleading. On its face, the financing statement appears to be that of a real property mortgagee perfecting a supplemental security interest in fixtures and personal property related to or located upon specifically described real property.

A third party reviewing the Defendant's filing statement could justifiably interpret it as evidencing an existing security interest only in those assets specifically described in the real property mortgage. Upon reviewing the mortgage in the public records to which it is directed by the financing statement, the third party would have his initial interpretation confirmed. In the instant case, a third party would not have received notice that the Defendant had a security interest in a substantial portion of the Debtor's contract receivables. *Matter of Munzenreider Corp.,* 34 B.R. 82 (Bkrtcy.M.D.Fla.1983); *Jimani Corp. v. S.L.T. Warehouse Co.,* 409 So.2d 496 (Fla. 1st DCA), *cert. den., Metro Bank of Dallas v. S.L.T. Warehouse Co.,* 417 So.2d 330 (Fla.1982).

■ Notice filing contemplates that the third party creditor will be directed to the security agreement underlying the filing statement for a controlling description of the collateral. *In re Pendleton,* 40 B.R. 306 (Bkrtcy.W.D.Ky.1984). It is the direction by the Defendant's financing statement that the third party creditor examine the mortgage on the real property in order to determine the extent of its security interest which is troublesome. Defendant having chosen to direct third parties to a source of information recorded in the public records cannot expect the third parties to continue their investigation beyond that. Rather than inviting further inquiry, the direction to examine the mortgage foreclosed it.

■ There must be some limitation on the scope of the protection of notice filing to limit the investigation a third party must make. *In re Volpe Enterprises, Inc.,* 42 B.R. 90, 93 (Bkrtcy.S.D.Fla.1984). The Court is unwilling to adopt a rule that would accord blanket protection to a creditor against the Debtor-in-Possession's avoiding powers under 11 U.S.C. § 554(a) simply because the creditor filed a financing statement which described some property. The mere filing of a financing statement, does not create a mandatory duty upon third parties to contact the debtor or creditor in every instance. Rather it is only when the financing statement contains a sufficient description of the type or item of collateral that the duty to pursue further inquiry arises. *See In re Kirk Kabinets, Inc.,* 15 U.C.C.Rep.Serv. 746 (Bkrtcy. M.D.Ga.1974); *In re Aragon Industries, Inc.,* 14 U.C.C.Rep.Serv. 1218 (Bkrtcy.S.D. Fla.1973); *In re Dubman,* 5 U.C.C.Rep. Serv. 910 (Bkrtcy.W.D.Mich.1968).

### DEFENSE OF ESTOPPEL

The Defendant asserts that the Debtor cannot avoid its security interest because it was upon the Debtor's urging that the security agreement concerning the contracts was not "recorded." The Defendant presented no evidence to support this allegation at the time of trial, although its vice-president did testify at a prior unrelated hearing that the Debtor requested that it not "file" as to the assigned contracts because the Debtor's corporate counsel expressed concern about the effect of the

assignment on the Debtor's outstanding construction loans. The lack of evidence, however, is immaterial because the Court concludes that the Defendant's estoppel defense is insufficient as a matter of law.

 The defense of estoppel is not available against the Debtor-in-Possession proceeding under the strong-arm clause of 11 U.S.C. 544(a). In the case of *In re Brent Explorations, Inc.*, 31 B.R. 745 (Bkrtcy.D.Col.1983) the Debtor-in-Possession sought to avoid an unrecorded collateral assignment of an interest in the proceeds of an oil well. At the Debtor's urging, and according to the express terms of the assignment, the debtor and creditor agreed that the assignment would not be recorded under the belief that such action would cloud title and could cause a prior lienor to withhold proceeds from the well to the detriment of both parties. Recognizing that under 11 U.S.C. § 1107 the debtor-in-possession has all the powers of a trustee, the *Brent* court held that where a debtor-in-possession utilizes the avoiding power of Section 544(a) it is vested with the rights of an ideal creditor, without knowledge or notice. "One of the purposes for providing the ideal creditor status is to prevent such defenses as estoppel from being raised against the Trustee." *Id.* at 749. *See also Frye v. Farmers and Merchant's Bank of Cape*, 561 S.W.2d 392 (Mo.App.1978). Since the instant Debtor, as Debtor-in-Possession, is vested with the avoidance powers of 544(a), the defense of estoppel is inapplicable. *Matter of Munzenreider Corporation, supra*, at 84, 85.

## CONCLUSION

Based upon the foregoing, it is clear that: (1) the contracts collaterally assigned to the Defendant are personal property security interests subject to the filing requirements of Article 9; (2) Defendant failed to demonstrate any exception to the filing requirement of Article 9 concerning the collateral assignment of contracts; (3) Defendant's financing statement did not sufficiently describe the assigned contracts by item or type so as to make possible their identification; (4) Defendant's financing statement limited perfection to personal property and fixtures encumbered by the real property mortgage; (5) Defendant's financing statement was seriously misleading because had a third party made inquiry of the referenced mortgage, the Defendant's interest in the assigned contracts would have remained undiscovered; and (6) the defense of estoppel may not be raised against the Debtor-in-Possession proceeding under Section 544(a).

Pursuant to Bankruptcy Rule 9021(a), a Final Judgment incorporating these Findings and Conclusions is being entered this date.