In re BOOGIE ENTERPRISES, INC.,
dba: Action Headwear; fka:
Plainview Headwear, Debtor.

David A. GILL, Chapter 7 Trustee,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 87–6571.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1988.

Decided Feb. 1, 1989.

Richard K. Diamond and Jeffrey L. Sumpter, Danning, Gill, Gould, Diamond & Spector, Los Angeles, Cal., for plaintiff-appellant.

Jan L. Luymes, Asst. U.S. Atty., Civil Div., Los Angeles, Cal., for defendant-appellee.

Before WRIGHT, NORRIS and WIGGINS, Circuit Judges.

WILLIAM A. NORRIS, Circuit Judge:

■ The trustee for Boogie Enterprises ("Boogie") appeals the judgment of the district court, 79 B.R. 4, which reversed the bankruptcy court's grant of summary judgment in the trustee's favor. At issue is whether a financing statement describing the collateral for a loan as "personal property" was sufficient, under Cal.Comm.Code § 9402(1), to "perfect" the Small Business Administration ("SBA")'s security interest in the proceeds of a lawsuit settlement. We agree with the Bankruptcy Court that it was not, and accordingly reverse the judgment of the district court.

## BACKGROUND

The SBA is a creditor of Boogie under a 1983 loan agreement which gives the SBA a security interest in Boogie's assets. In 1984, Boogie filed a Chapter 11 bankruptcy petition. Shortly afterward, the trustee for Boogie filed suit against one of Boogie's former customers. The suit was settled.

After reaching the settlement, the trustee sought a declaration in the bankruptcy court that the SBA did not have an interest in the proceeds of the settlement that was superior or prior to the rights of the trustee. The SBA contended, as it does on appeal, that a financing statement filed in 1983 pursuant to Cal. Comm.Code § 9203 had given the SBA a "perfected" or superior interest in the settlement proceeds.[1]

The bankruptcy court granted summary judgment to the trustee, holding that the financing statement was insufficient to perfect the SBA's security interest in the settlement proceeds. On appeal by the SBA, the district court reversed. The trustee now appeals.

## ANALYSIS [2]

Under the Uniform Commercial Code, the relevant portions of which have been adopted in the California Commercial Code, a creditor may "perfect" a security interest in collateral by filing a financing statement that describes the nature of the collateral. See Cal.Comm.Code §§ 9203, 9302. A perfected security interest gives the holder priority over holders of unperfected or subsequently perfected security interests in the same collateral. See Cal.Comm.Code §§ 9301(1)(a), 9312(5).

■ The Code requires that the financing statement contain the following information:

A financing statement is sufficient if it gives the name of the debtor and the secured party, is signed by the debtor, gives the address of the secured party from which information concerning the security interest ay be obtained, gives a mailing address of the debtor and *contains a statement including the types, or describing the items of collateral.*

Cal.Comm.Code § 9402(1) (emphasis added). The purpose of the financing statement is to put subsequent creditors on notice that the debtor's property is encumbered. This does not mean, however, that the financing statement must give a complete description of the collateral in the manner of a security agreement. As section 9110 of the Code states: "For the purposes of [the Code] any description of personal property or real estate is suffi-

---

1. The financing statement asserted an interest in the following:
    All furniture, fixtures, equipment, personal property, machinery, inventory, and accounts receivable now owned or hereafter acquired.

ER at 4.

2. This appeal presents a pure question of law, which we review *de novo. See In re Wolf & Vine, Inc.,* 825 F.2d 197, 199 (9th Cir.1987).

cient whether or not it is specific if it reasonably identifies what is described." Cal.Comm.Code § 9110.

As we have said, § 9402 is to be read liberally: "[o]nly the most basic description of property deemed to be collateral for an Article 9 security interest was contemplated [by § 9402] insofar as it might indicate to an interested third party that possible prior encumbrances might exist with respect to prospectively contemplated collateral." *Biggins v. Southwest Bank,* 490 F.2d 1304, 1307–08 (9th Cir.1973). However, as we recently noted, § 9402 is not a nullity; the statute does require a financing statement to contain a reasonable description of the encumbered property. *See In re Softalk Publishing Co., Inc.,* 856 F.2d 1328, 1331 (9th Cir., 1988).

At issue in this case is whether the SBA's financing statement was sufficiently descriptive to confer a perfected security interest in the settlement proceeds.[3] The financing statement asserted an interest in the following:

> All furniture, fixtures, equipment, personal property, machinery, inventory, and accounts receivable now owned or hereafter acquired.

ER at 4. The parties agree that the settlement proceeds are a "general intangible" within the meaning of the security agreement and the Code. The SBA argues, and the district court held, that the phrase "personal property" in the financing statement is sufficient to perfect the SBA's encumbrance of the proceeds.

We disagree. The weight of authority indicates that financing statements under the Uniform Commercial Code must describe collateral with greater precision than that furnished by the term "personal property." Professor Gilmore, who helped draft Article 9 of the UCC, wrote of § 9402's requirement that financing statements describe collateral by "type" or "item": "The description by 'types' is understood to require a certain degree of specificity: it would not be sufficient for the notice to claim 'all the debtor's property.' " 1 G. Gilmore, Security Interests in Personal Property § 15.3, at 477. This view is echoed in decisions of other courts holding that the term "personal property" is insufficiently specific to perfect security interests. For example, the Tenth Circuit in *In re Fuqua,* 461 F.2d 1186, 1188 (10th Cir.1972), held that a financing statement whose description of collateral consisted of the phrase "all personal property" was insufficient to perfect a security interest in livestock, feed, and farming equipment. *See also Merchants Nat'l Bank of Cedar Rapids v. Halberstadt,* 425 N.W.2d 429, 430 (Iowa Ct.App.1988) (holding that financing statement claiming interest in various farm equipment and products and "all personal property" did not perfect interest in coins and jewelry); *In re H.L. Bennett,* 588 F.2d 389, 392 (3d Cir.1978) (holding the phrase "all assets as contained in the security agreement" too vague to satisfy section 9402's requirement of descriptions of "types or items of collateral"); *In re Becker,* 53 B.R. 450, 452 (W.D.Wis.1985) ("all farm personal property" insufficient to perfect an interest in farm equipment); *In re I.A. Durbin, Inc.,* 46 B.R. 595, 598 (Bankr. S.D.Fla.1985) ("All property rights of any kind whatsoever, whether real, personal, mixed or otherwise, and whether tangible or intangible" insufficient).

We agree with the analysis of those courts and of Professor Gilmore. Section 9402's requirement of identification by "types" or "items" obliges the drafter of a financing statement to designate the collateral for a loan with greater specificity than the language "personal property" provides. "Personal property" encompasses all of the items—including general intangibles, among others—covered by the division of

---

**3.** There is no dispute that the original security agreement itself gave SBA a security interest in the settlement proceeds, for under the agreement SBA took as collateral all money acquired under Boogie's accounts. The security agreement gave Bank of America, and the SBA as guarantor, an interest in the following property:

> All rights to the payment of money now owned or hereafter acquired by Borrower, whether or not earned by performance including, but not limited to, accounts, contract rights, chattel papers, instruments and general intangibles.

the Code regulating secured transactions. *See* Cal.Comm.Code § 9102(1)(a).[4] The term refers to essentially *everything* that a creditor can perfect an interest in pursuant to the Code. "Personal property" cannot satisfy § 9402's required identification of "types" or "items" of collateral without effectively nullifying § 9402's requirement of identification of assets by "types" or "items," because "personal property" refers to no more and no less than every kind of collateral perfectible under the statute.

If the language "personal property" were sufficient to perfect a security interest, creditors would never need to use any other language to designate collateral. This is plainly at odds with § 9402's policy of requiring disclosure to potential creditors of the nature of encumbered collateral. Moreover, it makes no difference that in this case the SBA's financing statement uses the term "personal property" in conjunction with specific types of property such as equipment and accounts receivable: the term is simply redundant with all the other terms in the financing statement, and adds no new "items" or "types." We conclude that the financing statement did not perfect SBA's interest in the general intangibles at issue in this case.

Perhaps it would make more sense, in instances where a creditor had a security interest in all the debtor's assets, for the Code to release the creditor from the identification requirements for financing statements. But we are not free to create such an exception. Section 9402 requires that collateral be designated either by individual item or by type, which necessarily means in terms more specific than the catch-all term "personal property."

The judgment of the district court is REVERSED.

---

**4.** § 9102(1) [T]his division applies ...
   (a) To any transaction (regardless of its form) which is intended to create a security interest in personal property including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights. . . .