In re HILLSIDE ASSOCIATES LTD. PARTNERSHIP, Debtor.

UNITED STATES of America, DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, Appellant,

v.

HILLSIDE ASSOCIATES, a limited partnership dba Emerald Hills Convalescent Hospital, Appellee.

BAP No. NC–89–2116 ORAs.
Bankruptcy No. 1–86–01847.
Adv. No. 1–89–0123.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 27, 1990.

Decided Nov. 28, 1990.

Patrick J. Simonelli, San Francisco, Cal., for appellant.

Ellen A. Carroll, San Francisco, Cal., for appellee.

Before OLLASON, RUSSELL and ASHLAND, Bankruptcy Judges.

## ORDER

PER CURIAM.

The Department of Housing and Urban Development ("HUD") appeals from an order of the bankruptcy court which held that HUD did not have a perfected security interest in the revenue from debtor's nursing home. We affirm.

On May 1, 1982, Hillside Associates, the debtor (hereinafter "Hillside" or "debtor") borrowed $1,621,700.00 from Transamerica Mortgage Company ("Transamerica") and executed a note, deed of trust and security agreement (covering personalty) to secure that loan. HUD insured the loan under section 232 of the National Housing Act. Debtor used that money to refurbish a 72–bed nursing home in Ukiah, California. As a condition of insuring the note, HUD required the debtor to execute a separate Regulatory Agreement pledging its rights to "rents, profits, income and charges of whatsoever sort" derived from "operation of the mortgage [sic] property, subject, however, to any assignment of rents in the insured mortgage...."

The deed of trust contained an assignment of rents. It was properly recorded as a lien on real estate and rents. The Regulatory Agreement was recorded in the same manner. Neither document was filed in compliance with Division Nine of the California Commercial Code. Another security agreement concerning general intangibles and contract rights was filed under California Commercial Code §§ 9101, *et seq.*

Upon admission to the nursing home, patients execute Patient Agreements which bind the patient or a third party to pay for services rendered. Some of the payments are made by Medi–Cal, some by Medicare and some by private parties. It is these revenues which are the subject of this dispute.

In 1983, Hillside defaulted on the loan, and HUD paid Transamerica and succeeded to its interests. On November 20th, 1986, Hillside filed bankruptcy. On May 17th, 1989, Hillside filed an adversary proceeding challenging HUD's claimed lien on the revenues. HUD filed a motion for summary judgment. The bankruptcy court denied HUD's motion and held that the revenues were not "rents" and were therefore subject to the perfection requirements of Division Nine of the California Commercial Code. Later, Hillside filed a motion for summary judgment. HUD filed a motion for reconsideration at about that same time. The court denied HUD's motion and granted the motion for summary judgment in favor of the debtor.

The issue presented on this appeal is whether HUD had properly perfected its claimed security interest in the revenue of debtor's nursing home. The validity of HUD's claim to the debtor's revenue is a question of law which we review de novo. *In re Boogie Enterprises, Inc.*, 866 F.2d 1172, 1173 n. 2 (9th Cir.1989).

■ HUD claims a right to revenues generated by the debtor nursing home by virtue of two distinct security agreements.[1] In the first instance, HUD claims that the revenues received from Medi–Cal and Medicare are "rents" and, hence, cash collateral by virtue of an assignment of rents in the deed of trust or the Regulatory Agreement.[2] We disagree. Money paid for the care of nursing home patients can no more be described as "rents" than could hospital bills. That the patients live there is incidental to the fact that the nursing home is providing them with care. In similar contexts, other courts have held that revenue

from the operation of a hotel is not "rent," *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645, 647 (Bankr.C.D.Cal.1986); *In re Kearney Partners*, 92 B.R. 95, 102 (Bankr.S.D. N.Y.1988); and that gate receipts at a racetrack are not "rents." *In re Zeeway Corp.*, 71 B.R. 210 (9th Cir. BAP 1987).[3]

■ HUD also claims that it has a perfected security interest in the revenues by virtue of a UCC–1 filing. That document conveys a security interest in:

> All fixtures, articles of personal property and equipment, condemnation awards, general intangibles and contract rights, and all after acquired property of the same class and description, hereinafter called collateral, on and affecting the property at 333 Laws Avenue, Ukiah, California.

California law permits description of the collateral by type or by item. Cal.Com. Code § 9402. The description above is plainly not by item. Of the types of property described, only contract rights can conceivably cover revenue.

In construing the ambiguous language of the security agreement, we are mindful of California's policy of liberal interpretation and discouragement of "fanatical and ... refined reading(s) of ... statutory requirements." *In re Softalk Pub. Co. Inc.*, 64 B.R. 523, 525 (9th Cir. BAP 1986) (quoting Comment to Cal.Com.Code § 9402(8)). However, we are not free to disregard the plain language of section 9402 nor can we relegate Division Nine to the "status of a vague guideline." *Id.; In re Boogie Enterprises, Inc.*, 866 F.2d 1172, 1174 (9th Cir.1989).

At one time, the California Commercial Code defined the term "contract rights".

---

1. HUD also once made the contention that it was not subject to the dictates of state law because of the overriding federal interest. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). In its Opening Brief, HUD discusses this issue in a footnote but then concedes that "California law does not conflict with HUD's interests. Therefore the validity of HUD's security interests may be determined by reference to California law." Opening Brief at 6–7, n. 3. In the Reply Brief, HUD revives the issue full-blown. Given the waiver, we decline to address this issue.

2. The Regulatory Agreement was recorded in the same manner as the deed of trust. If the revenues are not "rent" then this method of recording does not suffice to perfect a security interest in income because it does not comply with Division Nine of the California Commercial Code.

3. *In re Morning Star Ranch Resorts*, 64 B.R. 818 (Bankr.D.Colo.1986) assumed that hotel revenues are rents. Such an assumption is misplaced. The patient agreements here do not convey an interest in realty—it is an agreement to provide certain services to the patient.

That type of property, however, was deleted in 1974—eight years before this agreement was executed. The agreement between the parties does not declare what they intended when they used the term "contract rights."

Appellant contends that the term "contract rights" is broad enough to include accounts. Courts look with disfavor on descriptions which "cover everything and describe nothing." *In re Softalk Pub. Co., Inc.*, 64 B.R. 523, 526 n. 1 (9th Cir. BAP 1986), *aff'd* 856 F.2d 1328 (9th Cir.1988). "A listing of collateral less specifically than by reference to the categories in Division 9 does not meet the requirement of § 9402 of identification by types." *In re Ashkenazy Enterprises, Inc.*, 94 B.R. 645, 647 (Bankr. C.D.Cal.1986); *See In re H.L. Bennett Co.*, 588 F.2d 389 (3rd Cir.1978) (implying, in dicta, that even description by defined categories might not be specific enough).[4]

## IV. CONCLUSION

HUD holds a security interest which is too broad to specifically embrace accounts. The revenue generated by the nursing home is not rent. Accordingly HUD holds no valid secured claim for the revenues generated by the nursing home. The trial court's decision is affirmed.

RUSSELL, Bankruptcy Judge, dissenting:

I respectfully dissent. Although the majority gives lip service to California's policy of liberal interpretation of security agreements, it then concludes that the debtor's "revenues" are not "contract" rights. I conclude otherwise.

Since the only income of the debtor was from the patients, which rights were governed by contracts, it makes no sense to say that this income was not intended to be covered by the UCC-1 filing.

---

**4.** We note that the appellant's claim to general intangibles does not cover these accounts. "General intangibles" are defined in the same statute as "any personal property (including things in action) other than … accounts…."