**In re SOFTALK PUBLISHING CO., INC., Debtor.**

**The WEBB COMPANY, a Minnesota Corporation, Plaintiff–Appellee,**

v.

**FIRST CITY BANK, et al., Defendant–Appellant.**

No. 86–6335.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Sept. 7, 1988.

Jonathan A. Tillman, Saltzburg, Ray & Bergman, Los Angeles, Cal., for defendant-appellant.

Gary E. Klausner, Robinson, Wolas & Diamant, Los Angeles, Cal., for plaintiff-appellee The Webb Co.

Before FLETCHER, FARRIS and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Defendant–Appellant First City Bank ("First City") appeals the opinion of the Bankruptcy Appellate Panel ("BAP") affirming a bankruptcy court's money judgment in favor of Plaintiff–Appellee The Webb Company ("Webb"). The bankruptcy court held, and the BAP agreed, that Webb's security interest in certain collateral of a bankrupt company is superior to that of First City. We are of substantially the same mind as the BAP, and we therefore affirm.

## I

On November 3, 1983, First City (then known as "California Citizens Bank") loaned $125,000 to the Softalk Publishing Company ("Softalk"). In exchange, Softalk gave its promissory note and a security interest in certain of its assets, including its accounts receivable. On November 16, First City filed with the California Secretary of State a UCC–1 financing statement, signed by Softalk, to perfect First City's security interest in Softalk's assets.

First City used a preprinted UCC–1 form for its financing statement. Where the form provided a blank space under the heading, "The FINANCING STATEMENT covers the following types or items of property," First City wrote, "See Attached." It then attached a separate sheet upon which was typed:

> As security for and in consideration of all present and any future advances or other obligations debtor hereby grants California Citizens Bank a security interest in all of the following types or items of property ("Collateral" herein) in which the debtor now has or hereafter acquires any right, title, or interest, or rights present and future, wheresoever located and whether in the possession of the debtor, a warehouseman, bailee, trustee or any other person, and all increases therein and products and proceeds thereof. Proceeds include but are not limited to inventory, returned merchandise, accounts, accounts receivable, chattel, paper, general intangibles, insurance proceeds, documents, money, goods, equipment, instruments, and any other tangible or intangible property arising under the sale, lease or other disposition of collateral:

Nothing followed the colon.

Softalk continued to maintain a checking account at First City, into which it deposited proceeds of accounts receivable.

Four months later, on March 1, 1984, Webb, having extended nearly $1 million in credit to Softalk, obtained a security agreement covering Softalk's accounts receivable, accounts, contract rights, and proceeds. Webb filed a financing statement on April 12, the validity of which is uncontested here. At all material times, Softalk owed Webb not less than $400,000.

On August 17, 1984, First City withdrew $78,343.14 from Softalk's account and applied the funds to an outstanding obligation of Softalk to First City. The funds included proceeds of Softalk's accounts receivable.

Softalk filed for bankruptcy under Chapter 7 on August 22, 1984. Webb filed a complaint in the bankruptcy court, contending that Webb had an interest superior to First City's in the money withdrawn by First City because First City's interest was unperfected. Webb argued that First City's financing statement failed to meet the requirements of California Commercial Code sections 9402 and 9110 because it did not provide an adequate description of the collateral. The bankruptcy court granted a partial summary judgment holding that First City's security interest was unper-

fected, and entered a money judgment in favor of Webb for $78,343.14 plus interest from August 17, 1984 at 10 percent per annum.

First City appealed to the BAP, which affirmed the bankruptcy court. *In re Softalk Pub. Co.*, 64 B.R. 523 (9th Cir. BAP 1986). This appeal followed.

## II

Because we are in as good a position as the BAP to review the bankruptcy court, we review the bankruptcy court's decision independently. *See Kupetz v. Elaine Monroe Assoc., Inc. (In re Wolf & Vine, Inc.)*, 825 F.2d 197, 199 (9th Cir.1987) (appeal from district court review of bankruptcy court). We review the bankruptcy court's conclusions of law de novo, and its factual findings under the clearly erroneous standard. *Renner v. State of Ariz. Dep't of Economic Sec.*, 822 F.2d 878, 879 (9th Cir. 1987). We review a summary judgment de novo, *Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 848 F.2d 976, 979 (9th Cir.1988).

## III

A security interest ordinarily arises upon the parties' execution of a security agreement. Cal.Comm.Code §§ 9201 & 9203. But to *perfect* a security interest, a creditor generally must file a financing statement. Cal.Comm.Code § 9203. A perfected security interest gives the holder priority over holders of unperfected or subsequently perfected security interests in the same collateral. Cal.Comm.Code §§ 9301(1)(a) & 9312(5).

Section 9402 states that a financing statement is sufficient if it provides the names and addresses of the debtor and the secured party, is signed by the debtor, and "contains a statement indicating the types, or describing the items, of collateral." Cal. Comm.Code § 9402(1). The statute mandates no particular language, nor does it insist on a strict format for compliance. "A financing statement substantially complying with the requirements of [section 9402] is effective even though it contains minor errors which are not seriously mis-

leading." Cal.Comm.Code § 9402(8). Section 9110 sets forth the requirements for an adequate description. "For the purposes of [the Code] any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Cal.Comm. Code § 9110.

The financing statement serves to give notice to other creditors or potential creditors that the filing creditor might have a security interest in certain assets of the named debtor. In contrast, the security agreement is a contract between a creditor and a debtor, pursuant to which the debtor encumbers its assets, granting a lien to the creditor in the specific items listed, upon the terms specified in the agreement. The differing purposes of the two documents often leads to descriptions of far less specificity in financing statements than in security agreements. The security agreement, the contract between the parties, setting forth the terms of a debt and creating legal obligations, must be adequate to its purpose. A higher degree of specificity might be necessary to define the rights of the parties. Accordingly, the Code requires that it include a "description of collateral." Cal.Comm.Code § 9203(1)(a). The financing statement, on the other hand, serves merely to alert third parties to inquire further; it therefore need not offer exhaustive details. "[T]he policy of [the Code is] to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves." U.C.C. § 9–402 Comment 9; Cal.Comm.Code § 9402 Comment 9. Under section 9110, a description suffices if it reasonably identifies the item described. "The test of sufficiency," the drafters wrote, "is that the description do the job assigned to it—that it make possible the identification of the thing described." U.C. C. § 9–110 Comment; Cal.Comm.Code § 9110 Comment.

## A

First City's principal argument is "that its financing statement is not seriously mis-

leading, if at all, because it contains sufficient information to put a third party on notice that the described property may be subject to a lien and that a further search is needed to determine whether a particular asset is covered by a security agreement." According to First City, compliance with the literal commands of the Code is irrelevant to the adequacy of a financing statement; a financing statement is adequate if it puts a third party on inquiry notice regardless of the extent to which it does or does not comply with the statutory requirements. We disagree.

■ Although we read section 9402 liberally, *see Biggins v. Southwest Bank*, 490 F.2d 1304, 1307 (9th Cir.1973), the statute does spell out a few minimal requisites. One of the section 9402 requisites provides that a financing statement must contain a statement identifying or describing the collateral. *See* Cal.Comm.Code § 9402(1). This statement need not be specific, *see* Cal.Comm.Code § 9110, and it may contain minor errors that are not seriously misleading, *see* Cal.Comm.Code § 9402(8), but its existence is mandatory, *see* Cal.Comm.Code § 9402(1). As the BAP observed, "[s]ince the UCC has reduced the formal requisites of a financing statement to a minimum, there can be no acceptable excuse for failure to comply with its provisions." 64 B.R. at 525. We agree, and conclude that a financing statement is insufficient to perfect a security interest unless it contains a statement identifying or describing the collateral.

■ Subsection 9402(8) does not alter the result. That provision allows a financing statement to contain minor errors that are not seriously misleading. Before subsection 9402(8) will save a financing statement that contains errors, however, that financing statement must substantially comply with the remainder of section 9402. Cal.Comm.Code § 9402(8). A financing statement that ignores even the few minimal mandatory requisites of section 9402 (here, by omitting the statement of collateral) is not "substantially complying" with section 9402 for the purposes of subsection 9402(8).

We hold that a financing statement that contains no description of collateral at all is insufficient to perfect a security interest and may not be cured pursuant to subsection 9402(8). *Accord In re Antekeier*, 6 U.C.C. Rep.Serv. (Callaghan) 1027, 1030 (W.D.Mich.1969) (financing statement stating "See attached description of property" but lacking attached description does not comply with section 9110 and subsection 9402(1) and is not cured by subsection 9402(8)).

B

■ Next, we must ascertain whether First City's financing statement contains the required statement of collateral. Only if it does do we address the questions of whether the financing statement "contains minor errors which are not seriously misleading," Cal.Comm.Code § 9402(8), and "reasonably identifies what is described," Cal.Comm.Code § 9110.

The financing statement contains no language that literally purports to be a "statement indicating the types of collateral or describing the items of collateral." In and of itself, this omission is a powerful indication that the financing statement in fact contains no such statement. First City contends that the language in the financing statement denominated "proceeds" (we will refer to that language as the "Description") constitutes the required statement; it was merely misdesignated because the word "proceeds" inadvertently replaced the word "collateral." We disagree with the reading proffered by First City.

In part, the Description states: "Proceeds include but are not limited to . . . any other tangible or intangible property arising under the sale, lease or other disposition of collateral: [sic]." Accepting First City's argument, the Description should make sense if it is "corrected" by re-substituting the word "collateral" for the word "proceeds." With this change, however, the Description would define collateral (in part) as the property arising under the disposition of collateral. But "collateral" simply does not "arise under" the disposi-

tion of collateral; "proceeds" "arise under" the disposition of collateral. Cal.Comm. Code §§ 9105(1)(c) & 9306(1).

Moreover, as the BAP observed, "collateral" and "proceeds" are terms of art under the UCC. 64 B.R. at 525–26. We agree with the BAP that courts "are not free to substitute the term 'collateral' for the term 'proceeds' " in a financing statement. *Id.* at 526. We see no reason to effect such a substitution in this case, and decline First City's invitation to do so.

We conclude that the Description in fact does what it purports to do: identify proceeds. Therefore, the financing statement does not "contain a statement indicating the types, or describing the items, of collateral." As a result, the financing statement is not "substantially complying" with section 9402 and is insufficient to perfect First City's security interest.

### IV

The result would be the same even if we agreed with First City's contention that the financing statement does contain a statement describing or identifying the collateral, but misdesignates that statement as "proceeds." Assuming First City's reading is correct, we must determine whether the Description satisfies section 9110 and whether the financing statement as a whole complies with section 9402. We have no doubt that, at least as to accounts receivable, the Description "reasonably identifies what is described" for purposes of section 9110. The problem is that "what is described" appears to be "proceeds." Consequently, the question remaining is whether a financing statement that describes collateral under the label of "proceeds" is substantially complying with section 9402 and contains only a minor and not seriously misleading error.

Like the BAP, we answer that question in the negative. Just as courts are not free to substitute the terms "collateral" and "proceeds" in a financing statement, holders of security interests are not free to do so, either.

"The test employed to determine if the [Description] is not seriously misleading is 'whether it would indicate to an interested third party the possible existence of prior encumbrances on the collateral.' " *Koehring Co. v. Nolden (In re Pacific Trencher & Equipment, Inc.)*, 735 F.2d 362, 364 (9th Cir.1984). This test is of limited usefulness in this appeal, because the sufficiency of the Description as a statement of collateral is not at issue. Instead, our inquiry relates to the degree of accuracy required in *designating* the Description *as* a statement of collateral. Perhaps, realistically speaking, no statement of collateral at all is necessary to put a potential third party lender on notice of possible encumbrances. Nevertheless, the drafters of the UCC and the California legislature decided that financing statements must contain a statement of collateral. This decision imposes a substantive requirement on secured parties to include in their financing statements a statement of collateral that is somehow meaningful.

Perhaps First City would have a valid argument if it had used some label other than "proceeds" to misdesignate its statement of collateral. That is not the situation in this case, however, and we express no opinion about the sufficiency of a financing statement that misdesignates the statement of collateral as something other than "proceeds." On the facts now before us, we agree with the BAP that if First City's financing statement is sufficient, "there is no reason to describe the property at all," 64 B.R. at 526. We reiterate that "collateral" and "proceeds" are terms of art under the UCC. A potential third party creditor encountering one of those terms in a bare-bones document such as a financing statement is entitled to rely on the accepted statutory meaning of that term in the absence of explicit language to the contrary apparent on the face of the financing statement itself. First City's financing statement contains no such contrary language. Accordingly, to the extent that it could be read as containing a statement describing or identifying the collateral misdesignated as "proceeds," First City's financing statement would contain an error more serious than the "minor errors which are not seri-

ously misleading" that are permitted by subsection 9402(8). It follows that the financing statement would be insufficient to perfect First City's security interest.

## V

The decision of the BAP affirming the bankruptcy court is AFFIRMED.