**In re 199Z, INC., a California corporation, Debtor.**

**James J. JOSEPH, Chapter 7 Trustee for the Estate of 199Z, Inc., Debtor, Plaintiff,**

**v.**

**1200 VALENCIA, INC., a California corporation, Ocean Pacific Sunwear, Ltd., a California limited partnership, Republic Factors Corp., a California corporation, Defendants.**

**Bankruptcy No. SA 90–08746 JR.**
**Adv. No. SA 91–3981 JR.**

United States Bankruptcy Court,
C.D. California.

Jan. 31, 1992.

Arnold L. Kupetz, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for defendants.

Robert A. Fisher, Law Offices of Robert A. Fisher, Irvine, Cal., for plaintiff.

## MEMORANDUM OF DECISION

JOHN E. RYAN, Bankruptcy Judge.

### I. Introduction

A. Factual Background and Procedural History

199Z, Inc., a California corporation ("199Z" or "Debtor") entered into an asset purchase agreement dated as of February 5, 1990, with 1200 Valencia, Inc., a California corporation ("Valencia"), Ocean Pacific Sunwear, Ltd., a California limited partnership ("OP") (collectively, "Defendants"), and Republic Factors Corp., a California corporation ("Republic"). Valencia is the general partner of OP. Pursuant to this asset purchase agreement, Defendants sold and 199Z purchased assets associated with the trademarks "JIMMY'Z" and "WOODY LOGO" ("Trademark Assets"). In exchange for the Trademark Assets, 199Z gave Defendants a total purchase price of $6,346,183.00, consisting of $500,000.00 cash and promissory notes for $2,300,-000.00 and $3,346,183.00. As security for the promissory notes, 199Z executed a security agreement in favor of OP encumbering all of 199Z's business, goodwill, trademarks and assets ("Security Agreement").

To perfect this security interest, 199Z (1) recorded a Memorandum of Security Agreement in the U.S. Patent & Trademark Office (the "Patent Office") on April 2, 1990; and (2) filed a UCC–1[1] Financing Statement in the Office of the Secretary of State of California on June 4, 1990 ("June

UCC–1"); and (3) filed an amended UCC–1 Financing Statement in the Office of the Secretary of State of California on November 1, 1990, including a UCC–2 amendment to the June UCC–1 ("November UCC–2").

The November UCC–2 resulted from the discovery of an error in the June UCC–1. The June UCC–1, in the section describing the property covered by the UCC–1, states "See Attachment A hereto." Attachment A states:

### Exhibit A

The personal property in which [OP] as Debtor, grants a security interest to *Republic Factors Corp.*, as Secured Party, includes, but is not limited to, all of the following, whether now owned or hereafter acquired:

1. *Trademarks.* Any and all trademarks, trade names or trade styles, registered or recognized in the United States of America or in any state or territory therein or in any foreign country, *excluding the trademark, tradename [sic] and trade styles of "JIMMY'Z" and "WOODY LOGO"*; and

2. *Property.* All of debtor's presently existing and hereafter acquired goodwill (whether associated with and identified by the Trademarks or not),....

(Emphasis added.)

Obviously, "Exhibit A" refers to an agreement between OP and Republic, and not to the Security Agreement between Debtor and Defendants. The corrected exhibit to the November UCC–2 states:

### Personal Property

The personal property in which 199Z, Inc., as Debtor, grants a security interest to [OP], as Secured Party, includes, but is not limited to, all of the following, whether now owned or hereafter acquired:

1. *Trademarks.* Any and all trademarks, trade names or trade styles, registered or recognized in the United States of America or in any state or territory therein or in any foreign country; and

---

**1.** All references herein to the "UCC" or to the "Uniform Commercial Code" are to Cal.Comm. Code (West 1990), unless otherwise indicated expressly or by context.

2. *Property.* All of debtor's presently existing and hereafter acquired goodwill associated with and identified by the Trademarks, business....

On November 10, 1990, OP declared that all sums due to it under the asset purchase agreement were immediately payable. A foreclosure sale was noticed and held, at which OP purchased the assets encumbered by the Security Agreement through a $1,000,000.00 credit bid.

An involuntary petition under Chapter 7 of the Bankruptcy Code was filed against 199Z on December 6, 1990. On January 14, 1991, Debtor filed a Notice of Consent to Entry of Order for Relief and Election to Convert to Case Under Chapter 11. This Court entered an order converting the case to a case under Chapter 11 on January 24, 1991. On Debtor's motion, this Court entered an order converting the case to a case under Chapter 7 on April 16, 1991. James J. Joseph ("Trustee") was appointed as the acting Chapter 7 Trustee for the estate of 199Z on May 10, 1991.

### B. The Adversary Complaint and Motion for Partial Summary Judgment

On October 22, 1991, Trustee filed an adversary complaint against Defendants and Republic. The adversary complaint alleged causes of action for avoidance and recovery of preferential transfers, fraudulent misrepresentation, negligent misrepresentation, breach of contract, accounting, damages, turnover and injunctive relief. The preferential transfer upon which Trustee bases his adversary complaint is the transfer allegedly created by the filing of the November UCC–2.

On December 23, 1991, Defendants moved for partial summary judgment on that element of the Trustee's preferential transfer cause of action specified under 11 U.S.C. § 547(b)(5). Defendants claim that the filing of the November UCC–2 did not

result in the Defendants' receiving more than they would otherwise have received in a distribution under Chapter 7, and that therefore the Trustee cannot establish this element of his cause of action for avoidance and recovery of preferential transfer. Specifically, Defendants argue that the filing of the November UCC–2 did not operate to perfect OP's security interest in the Trademark Assets.[2] Therefore, Defendants argue, the filing of the November UCC–2 "was without effect and did not enable the Defendants to receive more than the Defendants would get in a case under chapter 7 of title 11 if the transfer had not been made."[3] (Motion at 13:24–13:26.)

## II. Discussion

### A. Contentions of the Pleadings

Defendants present various alternative arguments in support of their contention that the November UCC–2 was without effect. The meritorious arguments among these can be summarized as follows:

(1) that the filing of the June UCC–1 perfected the transfer of the security interest in the Trademark Assets to OP, notwithstanding the erroneously attached "Exhibit A";

(2) that the November UCC–2 was only an amendment of the June UCC–1 and did not "destroy the priority of the secured party in previously perfected collateral [sic]." (Motion at 14:5–14:6); and

(3) that OP's security interest in the Trademark Assets was perfected by the filing of a Memorandum of Security Interest with the Patent Office.

In opposition, Trustee contends as follows:

(1) A security interest in a trademark must be perfected by a filing in accordance with the requirements of the UCC and not by a filing with the Patent Office:

---

**2.** Defendants wish to avoid a determination that the November UCC–2 operated to perfect their alleged security interest in the Trademark Assets, because that filing occurred within the preference period under § 547.

**3.** The language of their pleadings notwithstanding, Defendants appear to be arguing that the filing of the November UCC–1 *did not constitute a transfer,* either in addition to or in place of their argument that the filing did not enable them to receive more than they would receive through an ordinary Chapter 7 distribution.

(A) The Lanham Act provides only for the filing of "assignments" and not "security interests;" and

(B) An "assignment" is not a "security interest" under the Lanham Act.

Trustee's "Statement of Genuine Issues" is deficient: it does not refer to any evidence supporting the Trustee's contention that a genuine issue remains to be litigated.[4] As such, Defendants correctly point out, Trustee has offered no evidence in opposition to the motion. This Court finds that no material issue of fact remains to be litigated,[5] and therefore an analysis of the legal issues presented follows.

## B. Analysis

Federal Bankruptcy Rules of Procedure Rule 7056 incorporates Federal Rules of Civil Procedure Rule 56 by reference in adversary actions. Rule 56 states that the Court shall grant summary judgment or summary adjudication of issues where the evidence presented demonstrates that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. (*See Anderson v. Liberty Lobby*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509–2510, 91 L.Ed.2d 202 (1986).)

The dispositive legal issues which Defendants present for decision are more coherently stated:

(1) How is a security interest in trademarks, trade names and trade style properly perfected?

(2) Do Defendants have a perfected security in the Trademark Assets?

(1) Perfection of Security Interest in Trademark Assets: Federal Law

The Uniform Commercial Code provides for perfection of a security interest through filing a financing statement conforming with its requirements with the ap-

propriate Secretary of State. In this manner, a security interest in "general intangibles" can be perfected. The Uniform Commercial Code Official Comment to § 9106 ("Definitions: 'Account;' 'General Intangibles'") states:

The term "general intangibles" brings under this Article miscellaneous types of contractual rights and other personal property which are used or may become customarily used as commercial security. Examples are goodwill, literary rights and rights to performance. *Other examples are copyrights, trademarks and patents, except to the extent that they may be excluded by Section 9–104(a).*

*Id.* (emphasis added).

In turn, § 9104 provides:

This Article does not apply

(a) to a security interest subject to any statute of the United States, to the extent that such statute governs the rights of parties to and third parties affected by transactions in particular types of property; ...

*Id.*

Further, Section 9–302(3)(a) states that a filing under that section is not

necessary or effective to perfect a security interest subject to ... [a] statute or treaty of the United States which provides for a national or international registration ... or which specifies a place of filing different from that specified in [Article Nine] for filing of the security interest.

*Id.*

Defendants argue that, regardless of the sufficiency of either the June UCC–1 or the November UCC–2, their claimed security interest should be deemed perfected through their filing with the Patent Office. As authority for this proposition, Defen-

---

**4.** Local Rule 111(5) provides:

"Any party who opposes the motion [for summary judgment] shall, not later than 11 days before the hearing on the motion, serve and file a separate concise "statement of genuine issues" with responding papers setting forth all material facts as to which it is contended there exists a genuine issue necessary

to be litigated, *and referencing each fact to the evidence which establishes the genuine issue to be litigated."* Local Rule 111(5) (emphasis added).

**5.** The Court does not find the "genuine issues" raised by Trustee to be material to the proceeding. *See* Fed.Rules Civ.Proc.Rule 56(c).

dants direct the attention of the Court to *National Peregrine, Inc. v. Capitol Federal Savings & Loan of Denver (In re Peregrine Entertainment, Ltd.)*, 116 B.R. 194 (C.D.Cal.1990) (*"Peregrine"*). In *Peregrine,* Judge Kozinski held that the Copyright Act preempted state law provisions with respect to the perfection of security interests in copyrights, and that a creditor seeking to perfect a security interest in copyrights must file the appropriate documents with the U.S. Copyright Office and not with the Secretary of State. While many of the characteristics of copyright supporting federal preemption of state law, as outlined by Judge Kozinski, are equally applicable to trademarks (such as a unique federal interest in the subject matter as shown through comprehensive federal legislation, promotion of uniformity, and lack of situs of the personal property because of its incorporeal nature), one critical distinction exists between the federal legislation at issue in *Peregrine* and the Lanham Act trademark legislation.[6] The Copyright Act provides expressly for the filing of any "mortgage" or "hypothecation" of a copyright, including a pledge of the copyright as security or collateral for a debt. *Peregrine,* 116 B.R. at 198–199. The Lanham Act, however, provides expressly only for the filing of an assignment of a trademark, and the definition of "assignment" does not include pledges, mortgages or hypothecations of trademarks.

Trademark cases distinguish between security interests and assignments. (Citations omitted.) An "assignment" of a trademark is an absolute transfer of the entire right, title and interest to the trademark. (Quotation and citation omitted.) The grant of a security interest is not such a transfer. It is merely what the term suggests—a device to secure an indebtedness. It is a mere agreement to assign in the event of default by the debtor. (Quotation and citation omitted.)

Since a security interest in a trademark is not equivalent to an assignment, the filing of a security interest is not covered by the Lanham Act.

*Roman Cleanser Co. v. National Acceptance Co. of America (In re Roman Cleanser Co.,* 43 B.R. 940 (Bankr. E.D.Mich.1984). Had Congress intended that security interests in trademarks be perfected by filing with the Patent Office, it could have expressly provided for such a filing, as it did in the Copyright Act. "If Congress intended to provide a means for recording security interests in trademarks in addition to assignments, it would have been simple to so state. However, for whatever reasons, Congress did not do so." *Id.* at 946. This Court finds this distinction dispositive. Although there is no reported appellate decision precisely on point, this Court cannot find as a matter of law that the federal preemption for the purposes of perfecting security interest in copyrights set forth in *Peregrine* applies equally to the perfection of security interests in trademarks.[7] This conclusion is harmonious with those reached in the reported decisions of other bankruptcy courts. *See Creditors' Committee of TR–3 Industries, Inc. v. Capital Bank (In re TR–3 Industries),* 41 B.R. 128, 131 (Bankr.C.D.Cal. 1984); *Roman Cleanser Co. v. National Acceptance Company of America (In re Roman Cleanser Co.),* 43 B.R. 940, 944 (Bankr.E.D.Mich.1984). Accordingly, the recordation of the Memorandum of Security Agreement in the Patent Office did not perfect Defendants' security interest in the Trademark Assets. Therefore, I shall next consider whether Defendants properly perfected their security interest in the Trademark Assets under California law.

### (2) Perfection of Security Interest in Trademark Assets: California Law

■ Defendants contend that they perfected their claimed security interest in the

---

**6.** *See* 15 U.S.C. §§ 1051 *et seq.*

**7.** This result is not altered by the fact that, as in this case, the Patent Office *accepts* the filing of documents memorializing the granting of a security interest in a trademark. The Lanham Act gives the Patent Office the *discretion* to accept

various documents not expressly described in the Act; it does not, however, expressly provide for the filing of documents memorializing pledges of trademarks, as the Copyright Act does for hypothecations of copyrights.

Trademark Assets by filing the June UCC–1 with the Office of the Secretary of State of California, because the June UCC–1 meets the formal requisites of a financing statement under California law even though the erroneous exhibit was attached. Defendants argue that the erroneous exhibit was "not seriously misleading" within the meaning of Cal.Comm.Code § 9402(5).

Cal.Comm.Code § 9402 sets forth the formal requisites of financing statements. § 9402(1) provides in relevant part:

A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, *and contains a statement indicating the types, or describing the items, of collateral.*

*Id.* (emphasis added).

§ 9402(5) provides in relevant part:

A financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

*Id.*

From the plain language of § 9402(1) the financing statement must contain (A) a *description* of (B) the property of the *debtor* in which the secured party has an interest. Yet Defendants argue that the June UCC–1 is "not seriously misleading" under § 9402(5) because the exhibit attached to it, describing an agreement between OP and Republic Factors and not an agreement between OP and Debtor, is merely a "minor error." According to Defendants, an interested party reviewing the June UCC–1 would notice that the exhibit was a mistake, and therefore would be obligated to inquire regarding the substance of the actual security agreement between Debtor and OP.

■ A review of the applicable case law, however, compels a different conclusion. Taking Defendants' argument to its logical conclusion, Defendants could have attached a copy of the front page of *The Los Angeles Times* to the June UCC–1 and the financing statement would be effective: interested third parties reviewing the June UCC–1 would be on notice that there was a mistake and that they must inquire into the true substance of the underlying security agreement. However, the Commercial Code and the cases interpreting it require more. To be effective, a financing statement must reasonably describe the property of the debtor in which the secured party claims an interest.

The requirements of § 9402 are not to be read so broadly that they are read out of existence. The Ninth Circuit has stated:

As we have said, § 9402 is to be read liberally: "[o]nly the most basic description of property deemed to be collateral for an Article 9 security interest was contemplated [by § 9402] insofar as it might indicate to an interested third party that possible prior encumbrances might exist *with respect to prospectively contemplated collateral.*" *Biggins v. Southwest Bank,* 490 F.2d 1304, 1307–08 (9th Cir.1973). However, as we recently noted, § 9402 is not a nullity; *the statute does require a financing statement to contain a reasonable description of the encumbered property. See In re Softalk Publishing Co., Inc.,* 856 F.2d 1328, 1331 (9th Cir.[ ] 1988).

*Gill v. U.S. (In re Boogie Enterprises, Inc.),* 866 F.2d 1172, 1174 (9th Cir.1989) (emphasis added) ("Personal property" was an insufficient description of collateral to satisfy the requirements of the Commercial Code).

In a case remarkably similar to the case at bar, and cited in the above quotation, a financing statement was filed with the California Office of the Secretary of State where, in the section designated for description of collateral, the financing statement read: "See Attached." A separate sheet of paper was attached reciting:

[D]ebtor hereby grants [secured party] a security interest in all of the following types or items of property ("Collateral" herein) in which the debtor now has or hereafter acquires any

right, title, or interest, or rights present and future, ... and all increases therein and products and proceeds thereof. Proceeds include but are not limited to inventory, returned merchandise, accounts, accounts receivable, chattel, paper, general intangibles, insurance proceeds, documents, money, goods, equipment, instruments, and any other tangible or intangible property arising under the sale, lease or other disposition of collateral:

Nothing followed the colon.

*Webb Co. v. First City Bank (In re Softalk Publishing Co., Inc.)*, 856 F.2d 1328, 1329 (9th Cir.1988). In *Softalk*, the Ninth Circuit agreed with the Bankruptcy Court and with the Bankruptcy Appellate Panel in concluding that the filing of that financing statement was ineffective to perfect the claimed security interest because the financing statement contained an inadequate description of the collateral. "[A] financing statement that contains no description of collateral at all is insufficient to perfect a security interest and may not be cured pursuant to subsection 9402(8)." *Id.* at 1331. The Ninth Circuit explained:

One of the section 9402 requisites provides that a financing statement must contain a statement identifying or describing the collateral. *See* Cal.Comm. Code § 9402(1). This statement need not be specific, *see* Cal.Comm.Code § 9110, and it may contain minor errors that are not seriously misleading, *see* Cal.Comm. Code § 9402(8), *but its existence is mandatory, see* Cal.Comm.Code § 9402(1). As the BAP observed, *"[s]ince the UCC has reduced the formal requisites of a financing statement to a minimum, there can be no acceptable excuse for failure to comply with its provisions."*

*Id.* (citation omitted) (emphasis added).

The Ninth Circuit further specifically rejected the contention that Defendants raise in this case that the financing statement should put interested third parties on inquiry notice only, and is not misleading if it fails to describe the collateral at all:

Perhaps, realistically speaking, no statement of collateral at all is necessary to put a potential third party lender on notice of possible encumbrances. Nevertheless, the drafters of the UCC and the California legislature decided that financing statements must contain a statement of collateral. This decision imposes a substantive requirement on secured parties to include in their financing statements a statement of collateral that is somehow meaningful.

*Id.* at 1332.

In this case, the attachment to the June UCC–1 failed completely to describe the collateral *of the Debtor* in which OP claimed a security interest. Therefore, the June UCC–1 was ineffective to perfect a security interest in any collateral of Debtor, including the Trademark Assets. *See Webb Co. v. First City Bank (In re Softalk Publishing Co., Inc.)*, 856 F.2d 1328, 1329 (9th Cir.1988). Since this Court concludes that the June UCC–1 was ineffective to perfect OP's claimed security interest in the Trademark Assets, Defendants' contentions that the November UCC–2 amended a duly perfected security interest arising from the June UCC–1 have no validity.

## III. Conclusion

Neither the filing with the Patent Office nor the filing of the June UCC–1 perfected the claimed security interest of OP in the Trademark Assets. Therefore, Defendants' motion for partial summary adjudication, which depends on a duly perfected security interest through either of these filings, is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law. Counsel for the Trustee shall lodge and serve a proposed order denying partial summary adjudication consistent with this memorandum of decision.