**In re COTTAGE GROVE HOSPITAL, Debtor-in-possession.**

**Cottage Grove Hospital, Plaintiff,**

**v.**

**Daniel Glickman, et al., Defendants.**

**Bankruptcy No. 698–64406–AER11. Adversary No. 98–3272–AER.**

United States Bankruptcy Court, D. Oregon.

May 6, 1999.

Stephen Carroll, Muhlheim, Palmer & Wade, Eugene, OR, for plaintiff.

James Sutherland, Assistant U.S. Attorney, Eugene, OR, for defendant, U.S. Department of Agriculture.

Michael P. Kearney, Eugene, OR, for defendant, Siuslaw Valley Bank.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

### BACKGROUND

The Debtor-in-possession (Debtor) has commenced this adversary proceeding seeking a declaration that the Rural Utility Service (RUS), an agency of the United States Department of Agriculture and successor to FmHA, does not have a per-

fected security interest in the Debtor's accounts. Siuslaw Valley Bank (Bank), another creditor claiming a security interest in the Debtor's accounts, has been joined as a party defendant.

This matter comes before the court upon cross motions for summary judgment filed by the RUS and the Debtor. The Bank joins in the Debtor's Motion for Summary Judgment.

The court should grant summary judgment when it "is satisfied 'that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' Fed.Rule Civ. Proc. 56(c)." *Celotex Corp. v. Catrett, Administratrix of the Estate of Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Here, there is no genuine issue as to any material fact. Those facts material to this court's decision are as follows:

1. On December 21, 1981, the FmHA made two community facility loans to Debtor. The first loan was for $1,070,000 to be repaid in twenty five years at 5% interest per year. The second loan was for $810,000 to be repaid in twenty five years at 12% interest per year. The second loan was paid in 1994.

2. As security for the above-described loans, Debtor granted FmHA a real property mortgage[1] and Debtor signed a security agreement granting the FmHA a security interest in "[a]ll present and future contract rights, accounts receivable, and general intangibles arising in connection with the facility...."

3. In order to perfect its security interest in the Debtor's personal property described above, the FmHA filed a UCC Financing Statement with the Oregon Secretary of State on August 6, 1985 describing the collateral as "All Debtor's Income".

---

1. The perfection of the government's mort- gage is not in issue.

4. In 1994, Debtor refinanced part of its obligations to FmHA with funds borrowed from the Bank.[2]

5. In 1996, reorganization of the USDA resulted in the elimination of FmHA as an agency and the transfer of its rights and obligations to a new agency known as the RUS. The Debtor's obligation to repay the community loans now runs to the RUS.

## ISSUE

The sole issue that this court must resolve is whether or not the description of "All Debtor's Income" contained in the FmHA's financing statement is sufficient to perfect a security interest in the Debtor's accounts.

## DISCUSSION

The argument of the RUS that it has complied with all appropriate federal regulations is not material to this court's decision, since the parties agree that the question presented is resolved by an examination of Oregon's version of the Uniform Commercial Code.

The term "account" is defined by O.R.S. 79.1060(1) as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance."

O.R.S. 79.4020(a) provides in pertinent part that "[a] financing statement is sufficient if it … contains a statement indicating the types, or describing the items, of collateral." Concerning the sufficiency of the description of collateral in a financing statement, O.R.S. 79.1100 provides "any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described."

Thus, the question presented here is whether or not the statement "All Debtor's Income" reasonably identifies "accounts".

This court has not found any cases from any jurisdiction interpreting the sufficiency of the description: "All Debtor's Income". Where there are no Oregon cases directly on point, however, this court may look to decisions from other courts for guidance. *Westinghouse Electric Supply Company v. John Mitchell*, Civil No. 92–10–MA (D.Or. Mar. 24, 1992) (unpublished) (Marsh, J).

> The Code [UCC] … contemplates no fine distinctions of form as to descriptive language identifying property subject to a … security interest. In [sic] merely looks to the substance of the transaction, and the ordinary and common meaning to be attached to that which the parties contemplate as the encumbered object.

*Biggins v. Southwest Bank*, 490 F.2d 1304, 1308 (9th Cir.1974). "Only the most basic description of property deemed to be collateral for a security interest under Division 9 of the California Commercial Code … is required by C.C.C. § 9402 [O.R.S. 79.4020]." *In re Munger*, 495 F.2d 511, 512 (9th Cir.1974). It has been held that a financing statement describing collateral as "inventory" is sufficient to warn prospective creditors that the secured party's collateral could include after-acquired property. *Evans Products Company v. Jorgensen*, 245 Or. 362, 421 P.2d 978 (1966).

On the other hand, in *In re Becker*, 46 B.R. 17 (Bankr.W.D.Wis.1984), the court held that a financing statement covering "all farm personal property" was not sufficient to perfect a security interest in farm equipment, livestock, accounts and contract rights.

In *In re Softalk Publishing Company*, 856 F.2d 1328 (9th Cir.1988), the court dealt with a financing statement that described collateral under the label of "proceeds". O.R.S. 79.3060(1) defines proceeds to include "whatever is received upon the

---

**2.** RUS contends that the Bank's knowledge of the FmHA's security interest is a material fact which this court should take into consideration. The negotiations between the FmHA and the Bank, however, are irrelevant to this court's determination of the pending motions.

sale, exchange, collection or other disposition of collateral. . . ." Noting that the purpose of a financing statement is to put third parties on notice of a potential encumbrance and to prompt them to inquire further, the court held that "a financing statement that contains no description of collateral at all is insufficient to perfect a security interest. . . ." *Id.* at 1331.

The case which appears to offer the greatest guidance to this court is *In re Boogie Enterprises, Inc.,* 866 F.2d 1172 (9th Cir.1989). At issue there was the question of whether a financing statement describing collateral as "all personal property" was sufficient to perfect a security interest in the proceeds of the settlement of a lawsuit. There, the court stated in relevant part, as follows:

> The purpose of the financing statement is to put subsequent creditors on notice that the debtor's property is encumbered.
>
> ... § 9402 [O.R.S. 79.4020] is to be read liberally: ... However, ... § 9402 is not a nullity; the statute does require a financing statement to contain a reasonable description of the encumbered property.
>
> . . . .
>
> ... [F]inancing statements under the Uniform Commercial Code must describe collateral with greater precision than that furnished by the term "personal property."
>
> . . . .
>
> If the language "personal property" were sufficient to perfect a security interest, creditors would never need to use any other language to designate collateral. This is plainly at odds with § 9402's policy of requiring disclosure to potential creditors of the nature of encumbered collateral.

*Id.* at 1173–1175 (internal citations omitted).

The UCC does not define the term "income". Webster's Third New International Dictionary (1993) defines the term as:

> [A] gain or recurrent benefit that is usually measured in money and for a given period of time, derives from capital, labor, or a combination of both, includes gains from transactions in capital assets but excludes unrealized advances in value: commercial revenue or receipts of any kind except receipts or returns of capital.

Black's Law Dictionary 687 (5th ed.1979) defines the term as

> The return of money from one's business, labor or capital invested; gains, profits, salary, wages etc.
>
> The gain derived from capital, from labor or effort, or both combined, including profit or sale through sale or conversion of capital. . . .

Thus, the term "income" closely resembles O.R.S. 79.3060(1)'s definition of "proceeds".

In any event, this court concludes that the term "all income", like the term "all personal property" is too broad or generic to sufficiently describe collateral for the purposes of a UCC financing statement.

In the alternative, the term "all income" may describe proceeds, as opposed to collateral, in which case, the UCC financing statement fails to perfect RUS's security interest in accordance with the reasoning expressed by the Ninth Circuit Court of Appeals in *In re Softalk Publishing Company, Inc., supra.*

## CONCLUSION

Based upon the foregoing, this court concludes that the motion of the RUS for summary judgment should be denied and the cross motion of the Debtor for summary judgment should be granted. The Debtor is entitled to an order and judgment of this court declaring that the RUS does not have a properly perfected security interest in the Debtor's accounts. This opinion contains the court's findings of fact and conclusions of law pursuant to Bank-

ruptcy Rule 7052; they shall not be separately stated.